UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JOSE SALAS, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | NOS. 2:06-CR-18 |
| ) | 2:09-CV-223 |
| UNITED STATES OF ) | |
| AMERICA, ) | |
|     Respondent. ) | |

**MEMORANDUM OPINION**

Jose Salas ("petitioner" or "Salas"), a federal prisoner, has filed a "Petition Under 28 USC § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 184] and a memorandum in support of his petition, [Doc. 185]. The Court has thoroughly reviewed the petition and the record as a whole, from which it plainly appears that the petitioner is not entitled to relief. No government response is, therefore, necessary and no evidentiary hearing will be held. For the reasons which follow, the Court finds the petition to be without merit and this matter will be DISMISSED.

**I. Procedural And Factual Background**

The relevant facts are set out in an agreed factual basis filed along with the petitioner's plea agreement:

> From at least 2001 until May 2, 2006, Jose Salas participated with Donna Jane Chambers, Juan Jacinto, Jorge Armondo Coreas, Francisco Dubany Zelaya, Jesse Cristobol Ramzanali and others in a conspiracy to distribute and possess with the intent to distribute over five kilograms of cocaine. Salas and Chambers were involved in the distribution of more than fifteen but not more than fifty kilograms of cocaine to Dewey Lynn Phillips of Newport, Tennessee in 2005.

> In furtherance of the conspiracy, Salas and Chambers arranged for the delivery of four kilograms of cocaine on May 2, 2006, in Sevier County, Tennessee, and four kilograms of cocaine were delivered by Ramzanali to a special agent of the Tennessee Bureau of Investigation acting in an undercover capacity, the cocaine having been delivered to Ramzanali by Coreas, Zelaya and others.

[Doc. 77, Agreed Factual Basis].

On May 3, 2006, Salas, Donna Shipley, a/k/a Caroline Salas, ("Shipley"), Jesse Christobal Ramzanali ("Ramzanali"), Jorge Armondo Coreas, ("Coreas") and Francisco Dubany Zelaya, ("Zelaya"), were charged in a criminal complaint with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) (Count One) and distribution of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Two), [Doc.1]. Salas, Shipley, Ramzanali, Coreas and Zelaya were then indicted by the federal grand jury and charged in a two count indictment on May 10, 2006, with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841, 841(a)(1) and 841(b)(1)(A) (Count One) and distribution of 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Two), [Doc. 23]. Salas and Shipley were arrested in Fort Worth, Texas on June 19, 2006.

On August 8, 2006, the federal grand jury returned a superseding indictment in the case, adding a new defendant as to Count One, Juan Jacinto, ("Jacinto"), and charging Salas and Jacinto with possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), [Doc. 47]. The Court initially appointed counsel to represent Salas and retained counsel made an appearance on behalf of Salas on August 28, 2006, [Docs. 39, 52]. On October 26, 2006, a plea agreement, signed by Salas and counsel, was filed in which Salas agreed

2

to plead guilty to Count One of the superseding indictment charging conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine. The agreed factual basis referenced above was filed along with the plea agreement. On December 4, 2006, Salas entered his guilty plea and a presentence investigation report ("PSR") was ordered. The PSR found Salas's total offense level to be level 34, which included a three level increase in his offense level for being a manager or supervisor in a criminal activity involving five or more participants pursuant to USSG § 3B1.1(b). With a criminal history category of I, Salas's advisory guidelines range was 151-188 months imprisonment. Salas was subject to a ten year mandatory minimum term of imprisonment and a maximum term of life imprisonment by statute. Because Salas received the leadership enhancement, he was ineligible for the "safety valve". *See* 18 U.S.C. § 2553(e) and USSG §§ 2D1.1(b)(9) and 5C1.2.

Salas objected to the leadership enhancement under § 3B1.1(b), as well as the failure of the probation officer to apply the safety valve. A sentencing hearing was conducted on March 19, 2007. The government offered the testimony of Ramzanali in support of the leadership enhancement and Salas's objection was overruled. A government motion for downward departure was granted and Salas was ultimately sentenced to 132 months of imprisonment. Judgment was entered on March 23, 2007, [Doc. 148], and Salas timely appealed. On June 18, 2008, the Sixth Circuit affirmed, [Doc. 181], and Salas's timely petition to vacate was filed on October 13, 2009.[1] No petition for writ of certiorari was filed with the United States Supreme Court.

---

[1] It appears that Salas's petition, although filed with the Court on October 13, 2009, was executed by him on September 13, 2009, and "deposited in the mailbox marked and reserved for Legal Mail at FCC-Forrest City (LOW)" on September 13, 2009. Assuming the truthfulness of Salas's certificate of service, the petition is timely under the "Mailbox Rule."

3

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To

4

warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

### III. Analysis And Discussion

Salas raises four claims in his petition which he states as follows: (1) "Ground One: Petitioner's counsel rendered ineffective assistance in violation of the Sixth Amendment;" (2) Ground Two: "Petitioner's plea was unknowing and unintelligently made;" (3) Ground Three: "Sentence imposed violated due process;" and (4) Ground Four: "Prosecution reached plea agreement; bad faith; prosecutorial misconduct."

Although Salas states his claims as four separate claims, one claim is central to and underlies all of his claims: *e.g.* that he entered into his plea agreement and entered his guilty plea with one understanding: that "he would be sentenced to a term of between 70-87 months in prison" based upon promises made to him by his counsel during the plea negotiations. Salas asserts that he would not have signed the plea agreement or entered his guilty plea, but would rather have demanded a trial, had he "been fully aware of the implications of his guilty plea, . . ."

As noted above, Salas makes four general claims in support of his petition; each of the claims, however, relies on a single factual allegation, *i.e.*, that Salas was induced to enter into an unknowing and involuntary guilty plea by representations and/or promises from his attorney and/or the government that he would receive a sentence within a range of 70 to 87 months or that he entered

5

into his plea with an understanding, based on an inaccurate estimate of the Guidelines range by both the government and his attorney. For the reasons which follow, petitioner's claims fail because the record contradicts his claim that any promise of a sentence between 70 and 87 months was made and, even if he received an inaccurate estimate from his attorney concerning his advisory guideline range, such advice does not constitute ineffective assistance of counsel.

Salas asserts, both in his memorandum and in the attached supporting affidavit, that his counsel made a specific promise to him during plea negotiations "that he would be sentenced to the 70-87 month range due to his acceptance of responsibility and his cooperation with the government." He alleges that the government was also under the mistaken view during plea negotiations that the 70-87 month range would apply to his case. As noted above, Salas signed and filed with the Court a Rule 11 plea agreement on October 16, 2006, [Doc. 76]. In the plea agreement, Salas agreed to plead guilty to Count One of the superseding indictment charging conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. The plea agreement provided that "[t]he court may impose any lawful term of imprisonment up to the statutory maximum" and that the "maximum penalty" faced by defendant by virtue of his guilty plea "is a term of imprisonment of not less than ten years nor more than life imprisonment." [*Id.*, ¶¶ 1 and 2]. The plea agreement contained a cooperation provision with the defendant agreeing "to cooperate fully, truthfully, and completely with any and all law enforcement agents including but not limited to personnel of the United States Attorney's Office." [*Id.*, ¶ 3]. The government specifically agreed in the plea agreement to bring to the Court's attention at the time of sentencing "the nature, extent, and value of the defendant's cooperation" and provided that the government would "make a motion for downward departure pursuant to Section 5K1.1 of the Sentencing Guidelines or 18 U.S.C. §

3553(e), or both," if, "in the sole discretion of the United States, the defendant provides substantial assistance . . ." [*Id*., ¶ 8].

The plea agreement further provided that the "Defendant understands that the Court has the authority to impose any lawful sentence in this case" and further acknowledged that the United States Sentencing Guidelines would be considered in determining an appropriate sentence in defendant's case. He specifically acknowledged that his sentence would "be based upon the entire scope of defendant's criminal conduct, defendant's criminal history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(e)." [*Id*., ¶ 7]. The defendant acknowledged that he had read the indictment and that his attorney had fully explained the "potential penalties." [*Id*., ¶ 9]. Notably, the plea agreement contained the following provision: "This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s) and there are no other agreements, promises, undertakings, or understandings between the Defendant and the United States." [*Id*., ¶ 18].

Salas then appeared before the Court on December 4, 2006, and the Court conducted a complete and thorough Rule 11 colloquy before accepting petitioner's guilty plea. Salas initially acknowledged that he understood that he was under oath during the proceeding and that any false answers could be used against him in another prosecution for perjury or making a false statement. Salas indicated that he had "had an ample opportunity to discuss this case with [his] attorney" and declined any further opportunity to discuss the matter with his attorney even after expressing some lack of understanding about some of the words used in the indictment. Salas indicated that the plea agreement had been read to him and he was specifically offered an opportunity to have a copy of

the plea agreement in Spanish before the Rule 11 proceeding would continue. He declined that opportunity. Salas acknowledged that his attorney had explained the terms and conditions of the plea agreement and that he understood the terms and conditions of his agreement. He acknowledged his signature on the plea agreement and testified that he was satisfied with his attorney's representation. Salas was specifically asked during the Rule 11 proceeding if any officer or agent of the government had made any promise or suggestion that he would "receive a lighter sentence or any other form of leniency" if he pled guilty, aside from those contained in the plea agreement. He responded: "They just told me that if I were to plead guilty, it would reduce the number of points, if I pled guilty." The Court then asked if that was "based upon [his] acceptance of [his] responsibility for [his] crime," and he responded "yes."

Although a stipulation of facts signed by Salas had been submitted along with his plea agreement, when asked to affirm that he agreed with the summary of what he did contained in that document, Salas indicated that he did not remember everything that was written there. The Court then asked Salas to tell the Court what he did in this case and he responded "I'm guilty of what they're accusing me of." He was specifically asked if he agreed "with Ms. Chambers, Mr. Jacinto, Mr. Coreas, Mr. Zelaya, and Mr. Ramzanali to distribute and to possess with the intent to distribute cocaine?" and he answered, without hesitation, "yes." The government was asked to advise Salas "as to the maximum possible penalty provided by law for this offense." Salas was then advised that he faced "a term of imprisonment of not less than 10 years nor more than life imprisonment," and he indicated that he understood both that there was a ten year mandatory minimum sentence and that the maximum sentence was life imprisonment.

Salas was advised that the advisory Sentencing Guidelines were "one factor" that the Court

would consider in imposing an appropriate sentence in his case. He affirmatively indicated that he understood that the Court could not determine the advisory guideline range which applied to his case until after a presentence report was prepared by the United States probation office. The following exchange also took place:

> Q. All right, do you understand that these advisory guidelines that we've been talking about are advisory, they're not mandatory?
>
> A. Oh, ok.
>
> Q. Do you understand that even though I am required to consider your advisory guideline sentencing range, I am not bound by it?
>
> A. That's fine.
>
> Q. And do you understand that I could in fact impose a sentence that is more severe than the sentence called for in the advisory guidelines?
>
> A. Yes, sir.

[Doc. 189, p. 19]. Near the end of the proceeding, Salas's attorney was asked specifically by the Court if he had "made any representations to your client as to the sentence that [the Court] might impose in this case other than to discuss with him the applicability of the mandatory minimum sentence required by statute and to give him an estimate of his advisory guideline sentencing range?" The attorney answered "no, your Honor." The Court then accepted the guilty plea and ordered the preparation of the PSR.

To the extent that Salas claims there was a promise by either his attorney or by the United States attorney that induced him to enter into the plea, that is clearly contradicted by the record. Petitioner's plea agreement contained a clear and unambiguous statement that the plea agreement

contained the "full and complete agreement and understanding between the parties" and that there existed "no other agreements, promises, undertakings or understandings between the defendant and the United States." [Doc. 76, ¶ 18]. Salas acknowledged under oath that the plea agreement had been read to him, that its terms had been explained to him and that he understood all of the terms and conditions of the plea agreement. He specifically acknowledged that he understood that the Court could impose any sentence up to a maximum term of life imprisonment and that he understood that his guideline range was only "one factor" which the Court would consider in determining his sentence. He acknowledged in his plea agreement that the Court could impose any lawful term of imprisonment "up to the statutory maximum" and he was clearly advised of the statutory maximum at the change of plea hearing. Notably as well, Salas does not claim in his sworn affidavit that the government made any promise to him. He makes that claim only in his memorandum. The record clearly establishes that there was no promise by the government that Salas would receive a sentence within a range of 70 to 87 months of imprisonment and, to the extent he claims that such a promise induced an involuntary guilty plea, his claim is without merit. [2]

Petitioner's claim that he was promised a specific sentence by his attorney is likewise contradicted by the record. Most importantly, counsel was asked at the Rule 11 hearing if he had made any "representation" to Salas as to what sentence the Court might impose. Counsel answered with an unequivocal "No." Salas stood mute. Likewise, even after the PSR was disclosed and during the entire sentencing hearing, which was a lengthy proceeding, Salas never made any attempt

---

[2] The only thing in Salas's affidavit which could be even interpreted by implication as suggesting that the government made a promise is his statement that he got much more time "than these lawyers promised me." In any event, the record clearly establishes that no promise was made by the government. The government did acknowledge, however, that it had not anticipated the leadership enhancement although it was correctly applied by the probation officer.

to call to the Court's attention his allegation that his attorney had promised him a different sentence and, when given the opportunity to allocute, made absolutely no mention of his allegation. Furthermore, Salas's own sworn statement in support of his § 2255 petition is contradictory in that respect. He does argue that he was told by his attorney that if he signed the plea agreement and cooperated, he "would get a substantial assistance break and . . . a safety valve reduction too. He promised me that if I signed the agreement, I would get these benefits." [3] On the other hand, he says in the same affidavit that he was told that he would "get a better sentence by pleading guilty and cooperating with the government in the case."

The same affidavit, however, states that he was told by his attorney that there was "a deal where I *could* get sentenced to between 70 and 80 months in prison" and that if he signed the plea agreement, he "would get a low sentence of *around* 70-87 months." These contradictory statements by Salas show that no promise was made by his attorney of a particular sentence in the case. Even if the Court assumes that such a promise was made, Salas would suffer no prejudice as a result of the promise because he was clearly advised by the Court of the minimum mandatory sentence and the maximum sentence which the Court could impose in the case and was clearly told that the Court could impose a sentence above the applicable advisory guideline range. As noted above, Salas never challenged any of those statements and indeed responded "yes, sir" when advised that the Court

---

[3] As noted above, the leadership enhancement made Salas ineligible for a safety valve reduction. Salas also faults counsel for allowing him to sign an agreed factual basis that "ensured" that he could not benefit from safety valve--i.e. that the offense involved five or more participants. He does not allege that the factual basis was false and he overlooks the fact that the factual basis for the guilty pleas was found at the change of plea hearing, not from the agreed factual basis, but from his oral testimony that he conspired "with Ms. Chambers, Mr. Jancito, Mr. Coreas, Mr. Zelaya, and Mr. Ramzanali" to distribute cocaine. He answered in the affirmative. Salas further criticizes counsel for not investigating whether all five other participants "were subject to conviction by the government," noting that the indictment against Zelaya was dismissed. This would have made no difference since there were still five participants even without Zelaya.

could impose a sentence above the guideline range.

Even though Salas would have learned of the alleged error in his lawyer's advice at the time the PSR was disclosed and would have known about it throughout the sentencing proceedings, he never advised the Court of any misunderstanding on his part nor did he ever move to withdraw from his guilty plea on the basis that his plea was involuntary. This claim simply is without merit.

Likewise, petitioner's claim that he received an inaccurate estimate from his attorney as to his advisory guidelines range also does not justify the relief sought by the petitioner. The Court will assume, without so holding, that both the government attorney and petitioner's attorney were mistaken about the guideline range which would apply to the case during plea negotiations. Even so, that does not render petitioner's guilty plea involuntary.

"Bad advice about the length of a sentence rarely supports a finding of ineffective assistance of counsel." *Bibbs v. United States of America*, 2005 WL 3416476 (E.D. Tenn. Dec. 13, 2005) (citing *United States v. Penn-Harris*, 2001 WL 34083519, at * 2 (C.D. Ca. Feb. 9, 2001)). As a general matter, an attorney's inaccurate prediction about a possible sentence usually does not satisfy the deficiency prong of *Strickland*. *Bibbs*, 2005 WL 34016476, at * 5 (citing *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (stating "an attorney's mere inaccurate prediction of sentence does not demonstrate the deficiency component of ineffective assistance of counsel claim") (citation omitted)). *See also United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996) (finding counsel was not deficient in failing to factor in the defendant's status as a career offender); *Thomas v. United States*, 27 F.3d 321 (8th Cir. 1994) (holding that lawyer's failure to advise defendant that he could be sentenced as a career offender under the Guidelines does not constitute deficient performance).

"It is well settled that a defense attorney's erroneous calculation and prediction of the sentencing Guidelines is not a basis for setting aside a guilty plea." *United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993); *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) ("the mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement . . . . this is especially true under the new Sentencing Guidelines.") *See also Gonzalez v. United States*, 33 F.3d 1047, 1051-53 (9th Cir. 1994) ("The district court informed [the defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him. As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing Guidelines range and likely sentence."); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel. Further [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty pleas, the Court explained that the discretion as to what the sentence would be remained entirely with the Court.").

In this case, petitioner agreed in the plea agreement that "[t]he Court will determine the appropriate sentence under the Sentencing Guidelines and that this determination will be based upon the entire scope of [Petitioner's] criminal conduct . . ." He further acknowledged that he understood the Court's discretion to impose a sentence greater than that called for in the Sentencing Guideline range and that he understood that the Court could not determine the Guidelines range until after a PSR was completed by the probation office. Petitioner's statements under oath at the change of plea

hearing combined with the plea agreement conclusively show that petitioner knew that the Court, not his counsel, would determine his sentence. He was well aware of the mandatory minimum sentence which applied to his case as well as the fact that he could be sentenced to a maximum term of life imprisonment. Under these circumstances, even assuming that counsel's miscalculation of the Guidelines range resulted in a significant discrepancy between trial counsel's estimate of the Guideline range and the actual range and the sentence imposed, that does not render petitioner's guilty plea involuntary.

Furthermore, even assuming petitioner could show that trial counsel provided ineffective assistance of counsel, he could not establish prejudice sufficient to satisfy the second prong of *Strickland*. He alleges that, but for the miscalculation of his advisory guidelines range by his counsel, he would not have pled guilty and would have insisted on going to trial." However, a "mere allegation" that he would not have pled guilty but for counsel's errors is ultimately insufficient to entitle him to relief under § 2255. *See Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399 (2012). A defendant simply cannot establish prejudice when he is aware of the possible maximum sentence and is advised that his sentence may exceed any estimate provided by defense counsel. *See United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005) (the fact that defendant was aware of the maximum term of imprisonment "belie[s] [defendant's] claim that he was prejudiced by counsel's failure to accurately predict the impact of his criminal history"). There is simply no other evidence in the record which would suggest that petitioner would have exercised his right to proceed to trial even if counsel had accurately calculated the advisory guidelines range and the length of petitioner's ultimate sentence. Indeed, the record establishes that defendant was aware of the consequences of changing his plea and that he made no attempt to withdraw his plea even after

learning that he would receive a sentence greater than trial counsel's estimate. Trial counsel's miscalculation of the Guidelines range therefore, even if constituting ineffective assistance of counsel, is insufficient to establish the necessary prejudice.

In short, the record in the case conclusively establishes that petitioner was aware of both the minimum and maximum sentence which could be imposed, was clearly aware of the Court's discretion to sentence him in the case without regard to any advice given to him by his attorney and petitioner cannot meet the requirement of *Strickland*. Although petitioner states his claims differently, they all require the Court to find ineffective assistance of counsel based on counsel's miscalculation of the advisory Guideline range, since such miscalculation does not constitute ineffective assistance of counsel and, even if it did, petitioner can show no prejudice, all of his claims, even though stated differently, fail.

## IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and the motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467.

Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined the petitioner's claim under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

A separate judgment will enter.


ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE